1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **TERRY ALUISI,** | ) | **CV F 04-5373 AWI SMS** |
| | ) | |
| **Plaintiff**, | ) | **ORDER DENYING MOTION** |
| **v.** | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| **ELLIOTT MANUFACTURING CO.,** | ) | (Document #65) |
| **INC. PLAN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**BACKGROUND**

On March 3, 2003, this action was removed from the Fresno County Superior Court.  On April 16, 2003, Plaintiff filed an amended complaint.    Plaintiff requests that the court review Defendant's denial of long term disability benefits pursuant to ERISA.  On October 17, 2005, Plaintiff filed a second amended complaint pursuant to the parties stipulation.   The second amended complaint alleges that Unum Life Insurance Company of America ("Unum"), on behalf of Defendant Elliott Manufacturing Co., Inc. as the ERISA Plan and the ERISA Plan Administrator ("Elliott"), improperly denied Plaintiff long term disability benefits under ERISA.

On January 6, 2006, Defendant filed a motion for summary judgment.   Defendant contends that the abuse of discretion standard applies to this action.   Defendant contends that under either the abuse of discretion standard or de novo review, Defendant's denial of benefits was proper.  On January 20, 2006, Plaintiff filed an opposition.  On January 27, 2006, Defendant

filed a reply.   On March 6, 2006, the court held a hearing.   At the hearing, the court determined that Plaintiff should be given the oppertunity to submit additional discovery sought by Plaintiff. On June 16, 2006, the court issued its order allowing additional discovery.    The parties then conducted additional discovery and filed supplemental briefs to the pending motion for summary judgment.

## FACTS

**A. Undisputed Facts**[1]

Plaintiff Terry Aluisi was the Chief Operating Officer for Elliott Manufacturing Co., Inc.

Mr. Aluisi was a participant in Elliott's employee welfare benefit plan, which included a group long term disability plan ("the Plan") insured by Unum Life Insurance Company of America ("Unum") Policy No. 505313 001 ("the Policy").

The Certificate Section of the Policy states that "[w]hen making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."

The terms of the Policy provide that, "You are disabled when UNUM determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
You will continue to receive payments beyond 24 months if you are also:
- working in any occupation and continue to have a 20% or more loss in your indexed monthly earnings due to your sickness or injury; or
- not working and, due to the same sickness or injury, are unable to perform the duties of any gainful occupation from which you are reasonably fitted by education, training or experience."

---

[1] The undisputed facts are taken from the Administrative Record, Defendant's proposed undisputed facts, and Plaintiff's reply.  Some additional facts have been added that reflect the Administrative Record better than those submitted by the parties.
The court notes that Plaintiff has made objections to many opinions and conclusions of Unum and Unum's employees.   The court finds that Plaintiff's objections, such as  lacking foundation, are over-ruled.   In this section, the issue is not whether the conclusions are correct. The issue is what evidence did Unum have before it when it made its decision.   Whether Unum relied on unsubstantiated or incorrect opinions is an issue going to whether Unum correctly denied benefits.   The contents of the Administrative Record, including the opinions of people Unum asked to review the file, are undisputed facts in this case.

The maximum period of payment is to age sixty-five. However, benefits will end "during the first 24 months of payments, when you are able to work in your regular occupation on a part time basis but you choose not to," or on "the date you are no longer disabled under the terms of the plan."

Unum received Plaintiff's claim for long term disability benefits on January 3, 2002. Mr. Aluisi indicated that he had been unable to work since October 26, 2001 due to back pain.

Mazhar Javaid, M.D. completed the Attending Physician's Statement submitted with Mr. Aluisi's claim. Dr. Javaid stated that Mr. Aluisi was unable to work due to severe back pain caused by thoracic disc disease, a condition he had received treatment for since April 2000. Dr. Javaid also indicated that Mr. Aluisi should be able to return to work on June 15, 2002.

Unum notified Mr. Aluisi by letter dated February 1, 2002 that they needed additional medical information to evaluate his claim.   On April 3, 2002, Unum notified Plaintiff that his request for disability benefits had been approved.    The April 3, 2002, letter further stated: "We are approving benefits at this time.   However, in order to qualify for ongoing benefits, you must continue to meet the definition of disability in your contract.   We may request that you provide additional medical and/or vocational information on a periodic basis to support your claim for disability benefits."   U/A 244.

Unum requested updated certification of Mr. Aluisi's continued disability by letter dated May 23, 2002. In a supplemental statement completed in June 2002, Mr. Aluisi stated that he had chronic back pain which impacted his ability to sit, stand and walk, as well as trouble sleeping.

In a telephone call in May of 2003, Mr. Aluisi advised Unum that he was always in agony, and could only walk, sit or stand for ten to twenty minutes before the pain became unbearable.  U/A 716.

Michael P. Azevedo, M.D. began treating Mr. Aluisi on August 14, 2001. In a progress report dated January 18, 2002, Dr. Azevedo noted the following findings on physical examination: "The patient is seen resting comfortably in a chair. He is able to transfer from a

3

seated to a standing position without difficulty and he ambulates with a nonantalgic gait. The range of motion of his upper and lower extremities is within functional limits. His upper and lower extremity strength is 5/5 throughout. On palpatory examination, the patient has tenderness to palpation over the spinous processes of the thoracic spine." Dr. Azevedo noted essentially the same findings on physical examination at each visit from August 14, 2001 to January 18, 2002. Dr. Azevedo's assessment on January 18, 2002, was that Plaintiff had "chronic thoracic and some low back pain, with right hip pain." U/A 195. Dr. Azevedo's earlier assessments also indicated "palpable pain," see U/A 197, "chronic thoracic pain," see U/A 199, "chronic back pain," see U/A 201, "chronic low back pain," see U/A 203, "chronic upper thoracic back pain," see U/A 205, "chronic right flank pain," see U/A 208, "chronic back pain," see U/A 209, and "discogenic thoracic spine pain," see U/A 213.

Unum medical consultant Michael C. Randall, M.D. spoke with Dr. Azevedo on March 20, 2002. Dr. Azevedo stated that Mr. Aluisi complained of unexplained "intractable" lumbar pain since his gastric bypass surgery, which did not appear to be a complication of the surgery. Dr. Azevedo reported that further testing was in progress, and he estimated "that it will take a month to clarify this puzzling case." U/A 233.

In June 2002, Unum received updated medical records from Dr. Azevedo. The May 30, 2002 report indicate that Plaintiff is "being treated for his chronic pain, which is constant, moderately severe, midline back pain . . . does not change with position . . . is constant and moderate in severity and disabling to the point where he has not been able to work." U/A 296. Dr. Azevedo noted that a CAT scan of the abdomen was done without contract, which showed the postoperative changes of gastric bypass procedure, but no other abnormalities were noted. U/A 296. Dr. Azevedo's March 29, 2002 report indicates that although Plaintiff has an apparent T8-9 disc injury and mild degenerative changes in the lumbar spine, those conditions did not adequately explain the severity of his reported back pain. Dr. Azevedo's March 29, 2002 report states that at this point he could not "imagine that [Plaintiff] would be able to return to work, due

4

to the severity of his pain.   Therefore, he should probably remain off work for now, and I will fill out his disability papers."   U/A 299.

In December 2002, Dr. Azevedo completed an Estimated Functional Abilities Form provided by Unum.   In the Form, Dr. Azevedo indicated that as of December 2002, Mr. Aluisi had 4 - 8 hours of sedentary capacity. U/A 406-07.   In his declaration, Dr. Azevedo states that this was in error, and at that time and continuing to January 18, 2006, his pain renders Plaintiff totally disabled.   See Azevedo Dec. at ¶ 6.

Unum again received updated medical records from Dr. Azevedo in February 2003. Mr. Aluisi complained of being able to go out only rarely for a few hours, and of being unable to sit, stand, or walk for more than 30 minutes without a rest because of pain. Dr. Azevedo's findings on physical examination were consistent with previous visits.   Dr. Azevedo's December 6, 2002 report states that Plaintiff has had multiple treatments done, without any relief.   Dr. Azevedo states that Plaintiff "has basically been limited to a sedentary lifestyle and cannot even concentrate frequently during the day, because of his pain."   U/A 420.   Dr. Azevedo's assessment was that Plaintiff appears to have chronic neuropathic pain.   U/A 420.   Dr. Azevedo's November 1, 2002 report indicates Plaintiff states he continue to have the same pain, which is fairly unbearable.   U/A 421.   Dr. Azevedo's November 1, 2002 assessment is that Plaintiff has chronic abdominal pain and back pain.   U/A 421.   Dr. Azevedo's October 2, 2002 physical examination indicates that Plaintiff's range of motion in his "back is within functional limits, although doing the range of motion of his back causes increased mid and lower back pain . . . . On palpatory examination, he has no palpable tenderness.   However, he continues to have pain in the areas of palpation."   U/A 422.   Dr. Azevedo's October 2, 2002 report indicates that Plaintiff states he has no day that he does not have a significant amount of pain, and Dr. Azevedo's assessment was that Plaintiff appears to have chronic, intractable pain.   U/A 422.   Dr. Azevedo' July 8, 2002 report states:

> The patient still has severe upper and middle thoracic back pain that is moderate to severe in severity.   The pain is so severe that he is basically at a disabled point

1    at this point in time.  He can only stand for about five minutes and sit for about
2    five minutes and his walking tolerance is only five to ten minutes, before his back
     pain becomes so severe that he has to sit down or lie down . . . .

3    U/A 424

4         Dr. Javaid completed an Attending Physician's Statement on or around June 4, 2002. Dr.

5    Javaid stated that Mr. Aluisi had chronic back pain and was unable to bend, exercise or walk for

6    a long period of time.   Dr. Javaid indicated that Plaintiff had not been released to work in his

7    occupation, but he expected Plaintiff to be released to work on April 29, 2003.  U/A 327.    Dr.

8    Javaid indicated that Plaintiff could not perform sedentary activity, light activity, medium

9    activity, or heavy activity.  U/A 328.   Dr. Javaid also indicated that there would not be

10   significant changes in Plaintiff's functional ability in the foreseeable future.   U/A 328.   There is

11   no evidence in the record that Dr. Javid ever released Plaintiff to work.

12        Khalid Rauf, M.D. completed an Estimated Functional Abilities Form on July 29, 2002.

13   Dr. Rauf stated that Mr. Aluisi could not perform the activities listed (sedentary, light, medium,

14   heavy).

15        In an Estimated Functional Abilities Form completed on February 19, 2003, Dr. Rauf

16   stated that Mr. Aluisi was unable to perform any work activities. U/A 437.   In response to the

17   Form's question asking at what point in time Dr. Rauf felt that there would be a significant

18   change in functional ability, Dr. Rauf replied that Plaintiff is permanently disabled.   U/A 437.

19        Unum received a letter from Dr. Rauf dated July 21, 2003, discussing Mr. Aluisi's

20   treatment, Dr. Rauf noted that Plaintiff's treating doctors had not been able to make any

21   conclusive diagnosis regarding Mr. Aluisi's condition. Dr. Rauf stated that "according to the pain

22   specialist [Dr. Azevedo] his pain has become chronic which is not allowing him to work . . ."

23        Unum obtained Mr. Aluisi's medical records from Richard V. Guzzetta, M.D. on April 5,

24   2002.   Dr. Guzzetta initially evaluated Mr. Aluisi in January 2001.[2]   Dr. Guzzetta started

25

26        [2]  Plaintiff objects to Dr. Guzzetta's records because they are remote in time.   The court
     overrules the objection because Dr. Guzzetta's records are part of the Administrative Record.  To
27   the extent Plaintiff believes that Unum erred in relying on these records, this argument goes to

28                                          6

treating Mr. Aluisi for opioid addiction in November 2001.  Other than mentions of hip pain, "disc disease at T8," and the fact Plaintiff will see Dr. Salazar for injection therapy, Dr. Guzzetta's progress notes do not mention back pain prior to December 14, 2001.  See U/A 265, 267.   In Dr. Guzzetta's progress notes of December 14, 2001 and January 15, 2002, after Plaintiff was no longer taking opiods, Dr. Guzzetta noted terrible pain in Plaintiff's back.  U/A 256-57.  On March 15, 2002, Dr. Guzzetta noted that Plaintiff continued to have back pain.  U/A 255.

      After being advised that William von Kaenel, M.D. was treating Plaintiff, Unum obtained his records. Dr. von Kaenel initially examined Mr. Aluisi on September 8, 2003.   On September 8, 2003, Dr. Von Kaenel noted that Plaintiff "has thoracic and abdominal pain.  There are as many aspects of the pain favoring a visceral internal source or pain and also a spine source of pain." U/A 635.   Dr. von Kaenel gave Mr. Aluisi an epidural steroid injection on October 7, 2003.   Before the injection, Plaintiff rated his pain as 9 out of 10 and 3 out of 10 after the injection. U/A 637.   The injections provided some relief of Plaintiff's thoracic pain, but no relief of his flank pain.    Dr. von Kaenel noted that Mr. Aluisi had a normal thoracic MRI exam, and that the source of his reported pain was undetermined.   Dr. von Kaenel did not believe that Mr. Aluisi had a source of spine pain, and put him in the category of "undiagnosed abdominal pain."  U/A 639-40.

      In March of 2003, Mr. Aluisi's wife contacted Unum to advise them that Mr. Aluisi was still going to work, and was performing his regular job on a voluntary basis while receiving disability benefits. In addition, she reported that Mr. Aluisi was still using a company car.   While Plaintiff objects to this evidence as hearsay and lacking in foundation, Plaintiff's objection is over-ruled.   The Administrative Records reflects Plaintiff's wife did contact Unum and make these statements.   This evidence is relevant to Unum's decision to deny benefits.   Whether

---

whether Unum made the right decisions in this case.   However, Dr. Guzzetta's records are undisputed facts.

Unum was wrong to rely on this evidence in light of Plaintiff's explanations for why he was going to work, goes to the standard of review and whether Unum was correct to deny benefits. The Administrative Record reflects that Plaintiff told Unum that he visited Elliott.  U/A 483-84 When told that Plaintiff had been observed at Elliott for 3-5 hours at a time, Plaintiff told Unum that he went there to sign papers, visited friends, and laid down.  U/A 718.

An informant reported that Plaintiff was continuing to work while receiving disability benefits.   While Plaintiff objects to this evidence as hearsay and lacking in foundation, Plaintiff's objection is over-ruled.   The Administrative Records reflect an informant made these statements.   This evidence is relevant to Unum's decision to deny benefits.   Whether Unum was wrong to rely on this evidence goes to whether Unum was correct to deny benefits.

When Ms. Beam, a Lead Customer Care Specialist at Unum, called Plaintiff at work, she was told by the receptionist that Plaintiff was not there at the time because he "does his outside appointments in the mornings." Ms. Beam left a voice mail message for Plaintiff at his work telephone number, which Plaintiff returned within ten minutes.   While Plaintiff objects to this evidence as hearsay and lacking in foundation, Plaintiff's objection is over-ruled.   The Administrative Records reflect this evidence.   This evidence is relevant to Unum's decision to deny benefits.

Unum arranged in May 2003 to have Plaintiff put under surveillance. The surveillance team observed Plaintiff at Elliott's offices for several hours at a time.   While Plaintiff objects to this evidence as lacking in foundation, Plaintiff's objection is over-ruled.   The Administrative Records contain the tapes.   This evidence is relevant to Unum's decision to deny benefits.   .

Unum again arranged surveillance of Plaintiff over Labor Day weekend in 2003. During the period August 28 - September 1, 2003, the surveillance team observed Plaintiff sitting for extended periods of time; walking; squatting; driving a car; pumping gas; rowing a boat; carrying a radio; lifting a cooler; lifting and dragging an inflatable boat; pushing a two wheel dolly; pushing a shopping cart; and bending at the waist.  U/A 570-571, 801-835; Surveillance CDs.

While Plaintiff objects to this evidence as lacking in foundation, Plaintiff's objection is over-ruled.   The Administrative Record contains the tapes.   This evidence is relevant to Unum's decision to deny benefits.   Whether Unum was wrong to rely on this evidence in light of gaps on the tapes goes to whether Unum was correct to deny benefits.

Melanie Cross, R.N. performed a medical review on February 22, 2002. Nurse Cross reviewed Dr. Javaid's records for October and December 2001, and found that the treatment notes did not support a claim of thoracic pain. She noted that the x-ray of the thoracic spine demonstrated the expected changes for Mr. Aluisi's age group.  U/A 181-82.  Nurse Cross reviewed Dr. Azevedo's records on March 5, 2002. She noted that the lack of prescription pain medication following Mr. Aluisi's detoxification and the repeated examination findings that Mr. Aluisi was "sitting comfortably" did not support his reports of disabling pain. 28. U/A 216-19; While Plaintiff objects to this evidence as lacking in foundation, relevance, and no basis for Ms. Cross's expertise, Plaintiff's objection is over-ruled.   The Administrative Records contain Ms. Cross's report, and this evidence is relevant to Unum's decision to deny benefits.

Raymond Gritton, M.D., a physical medicine and rehabilitation specialist, reviewed the medical records from Dr. Javaid and Dr. Azevedo on March 7, 2002.   He recommended obtaining an attending physician's statement from Dr. Azevedo.[3]

On March 12, 2002, Ms. Cross reviewed additional medical records provided by Dr. Azevedo, which did not alter her prior opinion.  U/A 229.  While Plaintiff objects to this evidence as lacking in foundation, relevance, and no basis for Ms. Cross's expertise, Plaintiff's objection is over-ruled.   The Administrative Records contain Ms. Cross's report, and this evidence is relevant to Unum's decision to deny benefits.   Whether Unum was wrong to rely on Ms. Cross in light of the evidence supporting a disability goes to whether Unum was correct to deny benefits.

---

[3] Plaintiff's objection is over-ruled.   Whether Unum was wrong to rely on this evidence goes to whether Unum correctly denied benefits.

Dr. Gritton reviewed the additional medical records on March 19, 2002, and requested that further information be obtained from Dr. Azevedo.  U/A 230.  Plaintiff's objection is over-ruled.  Whether Unum was wrong to rely on this evidence goes to whether Unum was correct to deny benefits.

JoAnn Orozco, R.N. performed a medical review on November 18, 2002.  Ms. Orozco concluded that in the absence of a more aggressive treatment plan or new diagnoses, the restrictions and limitations for no work capacity appeared excessive.  U/A 398-399.  While Plaintiff objects to this evidence as lacking in foundation, relevance, and no basis for Ms. Orozco's expertise, Plaintiff's objection is over-ruled.   The Administrative Record contains Ms. Orozco's report.

Nurse Orozco followed up with Dr. Azevedo regarding Mr. Aluisi's restrictions and limitations by letter dated December 10, 2002, and received a completed Estimated Functional Abilities form in response, indicating that Mr. Aluisi had 4-8 hours of sedentary work capacity. U/A 401-07.   Plaintiff disputes this fact and points to Dr. Azevedo's declaration stating that his finding was a mistake.   However, there is no evidence in the Administrative Records indicating Dr. Azevedo ever told Unum this was a mistake.   To the extent Plaintiff objects on the ground that Dr. Azevedo's notes during this time indicated pain and a disability, Plaintiff's argument goes to whether Unum was correct to deny benefits, not whether the undisputed facts reveal Dr. Azevedo noted on a form that Plaintiff had 4-8 hours of sedentary work capacity.

Unum advised Plaintiff in letters dated July 16 and 17, 2003 that, based on the medical information and the activities observed during surveillance on May 14, 15, 28 and 30, 2003, his benefits were suspended until Unum clarified his eligibility for additional benefits.

Unum also responded to a letter from Mr. Aluisi's attorneys, explaining that Mr. Aluisi's observed activities were inconsistent with the statements that Mr. Aluisi and his doctors made regarding his restrictions and limitations.

In a July 16, 2003 telephone conversation regarding Unum's determination, Mr. Aluisi

acknowledged that he did continue to go to the office to "sign papers."  U/A 718.  When told he had been observed at the office for 3-5 hours at a time, Plaintiff stated had visited friends but lay down while he was there.   U/A 718.

In October 2003, Unum provided Dr. Javaid, Dr. Azevedo, Dr. von Kaenel and Dr. Rauf with copies of the surveillance video from Labor Day weekend for their review and comment. The letter stated that it was Unum's opinion that, given the observed activities, Mr. Aluisi had full time work capacity in his sedentary occupation.   The letter stated that if the doctor agreed with the assessment, they should sign and date the form.   If the doctor did not agree with this determination, the doctor was to provide Unum with a list of restrictions and limitations and copies of office notes, test results, and consultative reports that support the information.   U/A 595-96.

Dr. Javaid signed and returned the letter, only stating that his total review time was four hours.   U/A 595-96.

Dr. von Kaenel responded by letter dated October 17, 2003, stating that he was not Mr. Aluisi's primary treating physician, and had not been involved in the placement of any restrictions.

Dr. Rauf also signed and returned Unum's letter, noting that he could not "negate what the film shows regarding his walking, driving [a] vehicle and carrying and lifting different articles."  Dr. Rauf stated that Plaintiff had acknowledged to Dr. Rauf that he could walk and do other things, but his main complaint for many years is that he cannot sit for a long time and had to lie down to relieve his pain.   Dr. Rauf stated that Plaintiff's complaint of pain is a subjective symptom and stated a pain specialist would be better to review this subjective symptom. U/A 601-02.

Dr. Azevedo responded by letter dated November 21, 2003, and stated that the video did not convince him that Mr. Aluisi was misrepresenting his disability.   Dr. Azevedo stated that although Plaintiff could be seen doing several boating activities, carrying objects, and doing

some walking, an isolated indicate should not be taken out of context and the video does not show prolonged activities. U/A 605.

Michael C. Randall, M.D., an occupational medicine specialist, reviewed the file on November 24, 2003. Based on the records reviewed, including the responses of Dr. Rauf, Dr. von Kaenel, and Dr. Javaid regarding the surveillance, Dr. Randall concluded that Mr. Aluisi had full-time sedentary work capacity. U/A 706-07.  To the extent Plaintiff objects on the ground that Dr. Randall's conclusion is disputed because the treating physicians disagreed based on what they saw, Plaintiff's argument goes to whether Unum was correct to deny benefits, not whether there is a dispute on what Dr. Randall concluded.

Dr. Randall performed an additional medical review of Dr. Azevedo's response on November 25, 2003. Dr. Randall noted that it appeared that at the time the surveillance video was taken, Mr. Aluisi was not taking any pain medication, but the video did not document someone who was experiencing significant pain. Dr. Randall did not observe any pain behavior, such as grimacing, stopping to rest, etc. that would convince him that Mr. Aluisi was having difficulties doing activities at home, or during errands or recreational activities at the lake. He concluded that Dr. Azevedo's opinion was not consistent with the surveillance video.  U/A 727-28.  Plaintiff's argument that Dr. Randall was incorrect because Dr. Azevedo stated the videos did show pain and was consistent with the claimed disability goes to whether Unum was correct to deny benefits, not whether there is a dispute over what Dr. Randall concluded.

Based upon the medical and vocational information, Unum determined that Plaintiff did not meet the Policy's definition of "total disability." Lead Customer Care Specialist Delcie Beam called Mr. Aluisi's attorney on November 26, 2003 to advise him of the decision. Unum notified Plaintiff by letter dated December 4, 2003, that he would not be eligible for additional long term disability benefits.

Plaintiff appealed the claims determination by letter dated January 21, 2004.

Molly Sones, R.N. performed a medical review of the file on February 6, 2004. Nurse

Sones noted the discrepancy in December 2002 between Dr. Azevedo's Functional Capacity Evaluation (4 - 8 hours sedentary capacity) and Dr. Javaid's Functional Capacity Evaluation (permanent disability and unable to perform any work activities). Nurse Sones suggested that additional records from Dr. von Kaenel, Dr. Salazar, and Plaintiff's medications for pain might be helpful.   Nurse Sones stated that depending on Dr. Salazar's treatment of Plaintiff he may be able to comment on physical capacity and the surveillance findings.  U/A 625-26.

Nurse Sones reviewed the medical records from Dr. Salazar and Dr. von Kaenel and the surveillance videos on February 20, 2004.   She found that Plaintiff's self-reported level of pain and restriction did not appear credible, and continued total disability appeared excessive.   U/A 743-743B.   Plaintiff's argument that Nurse Sones was incorrect because she ignored the actual statements of Plaintiff's treating physicians goes to whether Unum was correct to deny benefits, not that this was not Nurse Sones' finding.

George G. Fluter, M.D., a physical medicine and rehabilitation specialist, reviewed the file on March 23, 2004. Dr. Fluter opined that Mr. Aluisi's orthopedic impairments would support restrictions and limitations to avoid repetitive bending, stooping and twisting. He further stated that these impairments should not preclude performance of sedentary level activities with allowance to change positions periodically for comfort, which was supported by the activities observed on the surveillance video.   U/A 744-45.   Plaintiff's argument that Dr. Fluter's conclusion was incorrect because he ignored the actual statements of Plaintiff's treating physicians goes to whether Unum was correct to deny benefits.

After reviewing all of the medical and vocational information, Lead Appeals Specialist Odette M. Ramos notified Plaintiff by letter dated April 1, 2004 that Unum's prior determination to discontinue payment of long term disability benefits had been upheld on appeal.

**B. Plaintiff's Additional Facts**

Unum scheduled an independent medical evaluation ("IME") for Plaintiff, but the examination was never conducted.   Unum even had a checklist prepared for the IME.   Neither

Unum, Unum's employees, nor a physician on Unum's behalf physically examined Plaintiff.

Plaintiff contends that Unum never made an analysis to determine if Plaintiff could perform the functions of his job nor did it determine if he was capable of performing work as a CEO/General Manager.   Unum offers evidence that a vocational rehabilitation consultant reviewed evidence from Plaintiff and Plaintiff's employer regarding Plaintiff's job duties and concluded that Plaintiff's occupation was classified as sedentary work.  U/A 433.  Sedentary work is defined as:   Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.   Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.   U/A 433.

While appearing to agree that Unum found Plaintiff could do sedentary work, Plaintiff claims that Unum never addressed Plaintiff's need to concentrate and make critical decisions.

Plaintiff provides his own declaration in which he states that he has not worked or attempted to work in almost four years.

Unum never asked Plaintiff's physicians to apply the disability test in the policy to his condition.   While not disputing this fact, Defendant argues that there is no evidence Plaintiff's physicians had experience or expertise in interpreting and applying the provisions in an ERISA plan or insurance policy.

Unum is the subject of a consent decree.

## DISCUSSION

ERISA provides for judicial review of a decision to deny benefits to an ERISA plan beneficiary.  See 29 U.S.C. § 1132(a)(1)(B).   It also creates federal court jurisdiction to hear such a claim.  See 29 U.S.C. § 1132(e).   In this action, Plaintiff requests the court review Unum's denial of long term disability benefits.   Defendant has filed a motion for summary judgment.   Defendant contends that based on the undisputed evidence, the standard of review in

1  this action is abuse of discretion.   Defendant next contends that under either the abuse of

2  discretion standard or de novo standard, Defendant is entitled to summary judgment because the

3  evidence shows Unum's decision to terminate benefits was correct.

4      ERISA does not specify what legal standard the court should apply when reviewing a

5  decision to deny benefits to an ERISA plan beneficiary.  See Firestone Tire & Rubber v. Bruch,

6  489 U.S. 101, 109 (1989).  Under the analysis approved by the Supreme Court in Firestone, a

7  denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or

8  fiduciary discretionary authority to determine eligibility or to construe the terms of the plan."  Id.

9  at 115.   To assess the applicable standard of review, the starting point is the wording of the

10 plan. Abatie, v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-963 (9th Cir. 2006).  "De novo is

11 the default standard of review.  Abatie v. Alta Health & Life Insur. Co., 458 F.3d 955, 963 (9th

12 Cir. 2006); Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).  However, if the

13 plan gives an administrator discretionary authority, a court must apply the "abuse of discretion"

14 or "arbitrary and capricious" standard of review to its decision to deny benefits.  Firestone, 489

15 U.S. at 111; Abatie, 458 F.3d at 963; Bendixen, 185 F.3d at 942.

16      For a plan to alter the standard of review from the default of de novo to the more

17 deferential abuse of discretion, the plan must unambiguously provide discretion to the

18 administrator.  Abatie, 458 F.3d at 963.   An ERISA plan that does not grant the power to

19 construe the terms of the plan is insufficient to confer discretionary authority on the

20 administrator.  Abatie, 458 F.3d at 964.   The Plan at issue here is the Unum Long Term

21 Disability Policy.    The parties agree that the Policy at issue in this action gives Unum the

22 discretionary authority to determine eligibility for benefits and to interpret the terms and

23 provisions of the policy.   Based on the Plan, the court may only review the denial of Plaintiff's

24 benefits for abuse of discretion.   Thus, the court's review of this action is abuse of discretion.

25      In their briefs, the parties discuss another reason that would allow the court to review a

26 denial of ERISA benefits de novo even when a policy mandated abuse of discretion review.  At

27

28                                              15

the time the parties briefed the pending motion, the court could review de novo if a Plaintiff

could show a sufficiently large conflict of interest.  See Atwood v. Newmont Gold, 45 F.3d 1317

(9th Cir.1995).  In Abatie v. Alta Health & Life Insurance Co., 458 F.3d 955 (9th Cir. 2006), the

Ninth Circuit changed how the court is to review administrator determinations under ERISA.   In

Abatie, the Ninth Circuit held that the abuse of discretion standard applies in all conflict of

interest cases where the plan grants discretion to the plan administrator, but indicated that such

review must be "informed by the nature, extent, and effect on the decision-making process of any

conflict of interest that may appear in the record."  Abatie  458 F.3d att 967.[4]  Under Abatie,

abuse-of-discretion review is merited when the plan confers sufficient discretion to the plan

administrator.  Abatie, 458 F.3d at 962-63.   The court is now required to weigh a conflict of

interest as a factor in abuse of discretion review and to consider a case by case balancing.  Id. at

968.   Abatie changed the law regarding conflicts of interest in several respects.   First, Abatie

eliminated the need for a plaintiff to produce evidence of a serious conflict.  Id. at 967.  Second,

Abatie allows courts to "tailor the review" after weighing "all the facts and circumstances" that

might indicate a conflict of interest.  Id. at 968-69.   Third, Abatie allows the court to weigh facts

and circumstances outside of the Administrative Record.  Id. at 970- 71.

          Based on Abatie, the court must grant Defendants' motion for summary judgment and

find that the abuse of discretion standard applies.   Given the policy's grant of authority to Unum

to determine eligibility benefits and interpret the terms and provisions of the policy, the court's

review is abuse of discretion.   However, finding abuse of discretion review applies does not

mandate abuse of discretion review under the pre-Abatie abuse of discretion standard.   The court

can now consider all the facts and circumstances that might indicate a conflict of interest when

---

[4]   There is one way the court can still apply de novo review despite a plan that grants discretion to the plan administrator.   "When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits."  Abatie, 458 F.3d at 971.   Because there are no allegations that Unum failed to comply with ERISA, the court will not address this one exception.

conducting its abuse of discretion review.   In addition, the court can consider the evidence submitted by Plaintiff that is not contained in the Administrative Record.   As such, the court will turn to whether there are any circumstances that indicate a conflict of interest.

**A.   Has Plaintiff Pointed to Factors or Circumstances Indicating a Conflict of Interest Which Must Be Taken Into Account When Conducting Abuse of Discretion Review?**

*1.  Application of Policy*

Plaintiff contends that Unum's conflict of interest can be shown because Unum has failed to acknowledge that there are different standards found in the Policy that are in play.   Under the terms of the policy, during the first 24 months, Plaintiff is entitled to benefits if Plaintiff is limited from performing the material and substantial duties of his regular occupation due to hisr sickness or injury.   After 24 months, Plaintiff is entitled to benefits if Plaintiff is unable to perform the duties of any gainful occupation for which he is reasonably fitted by education, training, or experience.   Because Unum denied benefits after 18 months, Plaintiff points out that he falls within the first standard.   Plaintiff argues that Unum only concluded he could perform sedentary activities, but never evaluated whether he could perform the material and substantial duties of Plaintiff's regular occupation.   Even under the second standard, Plaintiff claims Unum never concluded that Plaintiff was able to perform the duties of any gainful occupation for which Plaintiff is reasonable fitted by education, training, or experience.

Unum contends that it did properly apply the policy's terms.   Defendant offers evidence that a vocational rehabilitation consultant reviewed evidence from Plaintiff and Plaintiff's employer regarding Plaintiff's job duties and concluded that Plaintiff's occupation was classified as sedentary work.  U/A 433.  Defendant argues that because the vocational rehabilitation consultant determined Plaintiff's job duties were classified as sedentary work, Unum's conclusion that Plaintiff was able to do sedentary work properly applied the policy's terms.

Abuse of discretion may be found where the administrator construes provisions of the plan in a way that conflicts with the plain language of the plan.  See Saffle v. Sierra Pacific

17

Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 458 (9th Cir. 1996); Taft v. Equitable Life Assur. Soc., 9 F3d 1469, 1472 (9th Cir. 1993).   While not made clear by Plaintiff, it appears his argument is that Unum did not correctly apply the plan's terms because, instead of analyzing whether Plaintiff could do his regular occupation, Unum determined Plaintiff's regular occupation was sedentary work and then determined that Plaintiff could perform sedentary work.

In Saffle, the interpretation of a policy was at issue.   The plaintiff in Saffle was a customer services clerk and her job was described by her employer as mostly sedentary; she was seated at least 80% of the time.   Saffle, 85 F.3d at 457.   The plaintiff applied for disability benefits after suffering complications from surgery on her foot.   The plan language of the Plan stated that a person is totally disabled when she "is completely unable to perform each and every duty of his regular occupation."   Saffle, 85 F.3d at 457.   When finding the plaintiff not totally disabled under that definition, the administrator construed the disability definition to mean "the inability to perform substantial portions of the employee's regular job."   Id.   Because work was available for which she was qualified that would have enabled her to work with her feet elevated, most examining physicians determined that the plaintiff was not totally disabled.   The plan administrator then found that "the weight of the medical opinion is that you could perform a substantial portion of your regular job with the accommodations that could have been made."   Id. at 457-58.

The Ninth Circuit found that the administrator abused its discretion by defining the plan's terms in a manner inconsistent with the plain language of the plan.   Specifically, the Ninth Circuit found that the plan's substitution of the available work limitation "effectively imposes a new requirement for coverage." Id. at 459. Therefore, the court ultimately concluded that the administrator "arbitrarily construed the Plan to include performing a substantial portion of 'work available for which she is qualified' with accommodations that could have been made." Id. at 460.   However, the court also found that the plan's interpretation of the "each and every duty"

18

1 | language to mean all of the substantial and material duties of her regular occupation a reasonable

2 | interpretation of the plan, even though it was not based on the text.  Id. at 460.

3 |      Plaintiff contends that evaluating his ability to work at a sedentary job instead of his

4 | ability to work at his regular occupation shows that Unum did not apply the Plan's terms.    Here,

5 | there is evidence supporting the Plan's finding that Plaintiff's specific job was sedentary.    Use

6 | of the classification "sedentary occupation" instead of Plaintiff's specific job requirements is

7 | similar to the "substantial and material duties" requirement imposed in Saffle, 85 F.3d at 459,

8 | which was held to be reasonable even though it was not present in the plan language.    This

9 | distinction makes some practical sense.   It would be difficult to review plan language with

10 | respect to a claim without making some characterization of the demands of the claimant's job

11 | tasks.   Id.   Thus, the mere fact Unum chose to categorize Plaintiff's job is not, alone, a great

12 | factor to be considered when reviewing Unum's actions under an abuse of discretion analysis.

13 |      However, it does appear that  Unum's use of the category "sedentary occupation" instead

14 | of Plaintiff's actual job description caused the beginning of a chain of events that may have

15 | resulted in Unum not completely understanding Plaintiff's claimed disability.   Unum's definition

16 | of sedentary work included the ability to exert up to 10 pounds of force occasionally and/or a

17 | negligible amount of force frequently to lift, carry, push, pull or otherwise move objects,

18 | including the human body.    Sedentary work involves sitting most of the time, but may involve

19 | walking or standing for brief periods of time.    This definition appears to have resulted in Unum

20 | focusing on Plaintiff's ability to lift, carry, push, pull or move objects rather than Plaintiff's pain

21 | level and ability to sit for long periods of time.   Thus, Unum's categorization of Plaintiff's job

22 | will be considered as a circumstance when applying the abuse of discretion standard.

23 | **_2.  Inadequate Explanation_**

24 |      Plaintiff next contends that Unum's conflict of interest can be shown because Unum did

25 | not provide a proper explanation of its denial.   Plaintiff argues that Unum's denial letter only

26 | makes general statements that Plaintiff can do his regular occupation with no substantive analysis

27 |

28 |

1  as to how Plaintiff could do his job.   In support of this argument, Plaintiff cites to Lang v. Long-

2  Term Disability Plan, 125 F.3d 794 (9th Cir. 1997) and Tremain v. Bell Industries, Inc.,, 196

3  F.3d 970 (9th Cir. 1999).[5]

4       In Lang, the Ninth Circuit recognized that inconsistencies in the reasons given for the

5  administrator's decision were sufficient to establish a rebuttable presumption that the

6  administrator's conflict of interest affected its decision to deny benefits.   In Lang, the insurance

7  company handled the claim inconsistently, first denying benefits on the ground that the insured

8  had no physical disorder, and then on the ground that her disability was not caused by the

9  physical disorder that she had.   Lang, 125 F.3d at 799-800.   Lang offers little assistance to

10 Plaintiff because Lang focused on procedural inconsistencies caused by the defendant changing

11 the required proof after the receipt of evidence that complied with the initial requirement.   Here,

12 there is no argument or evidence that Unum has changed the proof Plaintiff was required to

13 provide.   Rather, Plaintiff's complaint is Unum's denial letter provided no analysis of how

14 Plaintiff could do his job.

15      In Tremain, the administrator canceled plaintiff's benefits after two of her treating

16 physicians had concluded that she was not disabled based on the definition of "total disability"

17 provided by the defendant.   Tremain, 196 F.3d at 973.   However, the definition the doctors

18 relied upon was more strict than the definition in her plan, and two of her other treating

19 physicians claimed that she was totally disabled under her plan's actual definition.   Id. at 974.   In

20 addition, the administrator failed to substantiate how the plaintiff's earning capacity was 50% of

21 her former earnings.   Id.   The Ninth Circuit found a conflict of interest existed based on the

22 administrator relying on the wrong total disability definition and the defendant's failure to

23 substantiate plaintiff's earning capacity.   Id. at 977.

24  _____

25      [5] Both Lang and Tremain were decided before Abatie.   These cases concerned whether
    there was a conflict of interest of such a nature that de novo review would apply.   This is no
26  longer a question to be addressed in an ERSA action.   However, these cases still give guidance
    on events that have previously been found to indicate a conflict of interest, and as such, may be
27  circumstances that should be considered when conducting abuse of discretion review.

28                                             20

This case differs from Tremain.   Unum never relied on the wrong definition of disability. Unum also substantiated its conclusions regarding Plaintiff's ability to do sedentary work through the conclusions of Dr. Randall, Nurse Sones, and Dr. Fluter.   Neither Tremain nor any other case cited by Plaintiff require the Plan to provide a detailed analysis of how a participant can do his job.   Here, the Plan stated in its denial letter that Plaintiff could do sedentary work, and that Plaintiff's job as a General Manager/ Chief Operations Officer was sedentary work. Unlike Tremain, Unum had evidence that Plaintiff could do sedentary work.   Whether this evidence was not reliable or incorrect is not the issue in this action.   Contrary to Plaintiff's argument, Unum did not need to explain how Plaintiff could do his work despite debilitating pain because Unum concluded that Plaintiff was not in debilitating pain and could do sedentary work. Whether Unum was incorrect in this finding remains to be seen.   However, Unum's failure to provide more details in its stated reason is not a circumstance indicating a conflict of interest that must be taken into account when conducting abuse of discretion review.

### 3.  Failure to Believe Plaintiff's Doctor

Plaintiff contends a conflict of interest can be shown because Unum disregarded information from Plaintiff's physician.   The primary doctor who treated Plaintiff for his pain was Dr. Azevedo.  Dr. Azevedo states that Plaintiff is disabled, and found nothing in the surveillance video inconsistent with Plaintiff's disability.   In denying Plaintiff benefits, Unum clearly disagreed with Dr. Azevedo.

The court should not accord special weight to the opinions of a Plaintiff's physician, nor is Unum required to explain why it disregard's the treating physician's evaluation for credible conflicting evidence.  Black and Decker Disability Plan v. Nord, 538 U.S. 822, 833-34(2003). However, even without a rule requiring deference to a treating physician, a plan " may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan,  349 F.3d 1098, 1109 (9th Cir. 2003).   For example, on de novo review, the court may "take

cognizance of the fact (if it is a fact in the particular case) that a given treating physician has a greater opportunity to know and observe the patient that a physician retained by the plan administrator." Id. (internal quotation omitted).

In <u>Zavora v. Paul Revere Life Ins. Co.</u>, 145 F.3d 1118 (9th Cir.1998), the plaintiff's ophthalmologist stated that his disability resulted from a thorn which had become buried in the back of his eye, that had occurred after the effective date of the insurance. Id. at 1122. Plaintiff's ophthalmologist stated that the disability would not have occurred but for the thorn injury, which was the cause of the disabling pain. Id. The defendant referred the plaintiff's claim to its medical personnel, none of who were ophthalmologists. Id. at 1122-23. Without examining the plaintiff or conferring with his ophthalmologist, these medical personnel determined that his disability was caused by a pre-existing dry-eye problem. Id. at 1223. The Ninth Circuit held that this determination was an abuse of discretion. Id. The Ninth Circuit recognized that an ERISA administrator is entitled to substantial deference, but also recognized that the administrator must have some reasonable basis for its decision denying benefits. Id. Although the plan acknowledged the reports of the plaintiff's ophthalmologist, the Ninth Circuit noted that the plan had rejected his conclusions without a sufficient evidentiary basis for doing so. Id.

In <u>Jordan v. Northrop Grumman Corp. Welfare Benefit Plan</u>, 370 F.3d 869 (9th Cir. 2004), the Ninth Circuit upheld the plan administrator's denial of the claimant's long term disability claim on the basis that the claimant had not sufficiently established that her fibromyalgia was disabling. In doing so, the Ninth Circuit contrasted the situation presented there with that presented in <u>Zavora v. Paul Revere Life Ins. Co.</u>, 145 F.3d 1118 (9th Cir.1998). First, in <u>Jordan</u> the administrator had the claim evaluated by a physician who was a specialist in the relevant field, while in <u>Zavora</u> the administrator had had the claim evaluated by a physician who was not a specialist in the relevant field. Second, in <u>Jordan</u> the administrator sent the evaluating physician's report to the claimant's physician for a response, while in <u>Zavora</u> the administrator did not do so. Third, in <u>Jordan</u>, the claimant's physicians offered no explanation as

to why the claimant's medical condition was disabling, while in <u>Zavora</u> such an explanation was less necessary because the condition at issue was more obviously disabling.  <u>Jordan</u>, 370 F.3d at 881.

This case is similar to <u>Zavora</u> because the reviewing physicians employed by Unum disagreed with Plaintiff's primary treating physician, and Unum declined to accept additional information that explained why the surveillance tapes were not inconsistent with Plaintiff's disability.  Just like the medical personnel in <u>Zavora</u> were not ophthalmologists, and none of the nurses and doctors who reviewed Plaintiff's records were pain specialists.  Dr. Randall is an occupational medicine specialist, who found that in light of the fact Plaintiff was not on pain medication, the video did not document someone who was experiencing significant pain, and the video did not show someone having difficulties doing activities at home, or during errands or recreational activities at the lake, Plaintiff was not disabled.  Nurse Sones also does not appear to have any special training in dealing with chronic pain.   Nurse Sones found that Mr. Aluisi's self-reported level of pain and restriction did not appear credible, and continued total disability appeared excessive.  Dr. Fluter is a physical medicine and rehabilitation specialist.  He found Plaintiff's orthopedic impairments would support restrictions and limitations to avoid repetitive bending, stooping and twisting. He further stated that these impairments should not preclude performance of sedentary level activities with allowance to change positions periodically for comfort, which was supported by the activities observed on the surveillance video.

Other than Nurse Sones, who relied on Dr. Azevedo's now retracted statement that Plaintiff had 4-8 hours of sedentary activity, all of Unum's medical personal provide little insight into Plaintiff's claimed ailments.   Dr. Fluter looked at Plaintiff's orthopedic impairments and whether Plaintiff could bend, stoop, twist, and lift.   The most recent diagnosis indicate that Plaintiff does not have orthopedic impairments, as these have been ruled out by testing.    Rather, Plaintiff has chronic pain.   After testing had been completed, the medical records indicate the diagnosis for Plaintiff's pain was "undiagnosed abdominal pain" and "chronic neurophthic pain."

1  Plaintiff's claimed disability is based on the inability to sit, stand, or walk for long periods of

2  time without pain.   Plaintiff's most recent medical evaluations do not state Plaintiff is unable to

3  lift, bend, stoop, twist, carry, or exert himself because of a muscular or skeletal problem.

4  There court finds that Unum's failure to take into account Dr. Azevedo's diagnosis and

5  opinion is a circumstance that the court must consider when conducting its abuse of discretion

6  review.   There is simply a disputed issue of fact on whether Unum improperly disregarded Dr.

7  Azevedo and misconstrued the surveillance tapes.   Taking the evidence in the light most

8  favorable to Plaintiff, as the court must do on this summary judgment motion, the facts of this

9  case are more similar to those presented in Zavora than to those presented in Jordan.

10  ***4.  IME***

11  Plaintiff contends that Unum's conflict of interest can be shown by Unum's failure to

12  have Plaintiff see an IME.

13  Where a conflict of interest may impede ERISA plan administrator's impartiality, the

14  Tenth Circuit has held that the administrator best promotes the purposes of ERISA by obtaining

15  an independent evaluation.  Fought v. Unum Life Ins. Co. Of America, 379 F.3d 997, 1015 (10th

16  Cir. 2004).   However, the Tenth Circuit acknowledged that such an IME is not required.  Id.

17  Where a conflict of interest exists, the Seventh Circuit encourages, if not requires, such an

18  inquiry: "When it is possible to question the fiduciaries' loyalty, they are obliged at a minimum to

19  engage in an intensive and scrupulous independent investigation of their options to insure that

20  they act in the best interests of the plan beneficiaries." Hightshue v. AIG Life Ins. Co., 135 F.3d

21  1144, 1148 (7th Cir.1998) (internal quotation marks omitted).  The Eighth Circuit has held that an

22  administrator erred by failing to obtain an independent review of the claim by an expert when

23  treating physician determined the applicant was disabled and when there was evidence of an

24  uncommon disease.  Woo v. Deluxe Corp., 144 F.3d 1157, 1161 (8th Cir.1998)

25  Plaintiff does not cite, and this court could not find, binding case authority indicating that

26  the failure to do an IME creates a conflict of interest.   However, the court finds that Unum's

27

28  24

failure to conduct an IME is a circumstance that must be considered when considering whether Unum abused its discretion in this action.   Plaintiff has provided evidence that Unum determines whether an IME is necessary on a case by case basis.   See Interrogatory 5.   In this case, an IME may have confirmed that Plaintiff's primary complaint was the inability to sit or stand for long periods of time and not the inability to lift, pull, push, and carry objects, along with, exert himself briefly.   While this court should not speculate on what an IME would have concluded, the failure to do an IME is a circumstance the court will consider when conducting its abuse of discretion review.

**B.  Summary Judgement Under Abuse of Discretion Standard**

In the pending motion for summary judgment, Defendant contends that it is entitled to summary judgment applying the abuse of discretion standard.   The evidence and law cited by Defendant on this motion for summary judgment is not sufficient for the court to determine that Plaintiff is not disabled under the terms of the Plan.   Because Abatie had not been decided when the parties briefed this case, no party has briefed whether Unum abused its discretion in denying benefits considering the factors and circumstances noted above.   Thus, the court declines to determine whether Defendant is entitled to summary judgment without further briefing.

**CONCLUSION AND ORDER**

There have been significant changes in ERISA law since the time the pending motion was briefed.   Based on these changes, the court must conduct an abuse of discretion review, taking into account the factors and circumstances noted in this motion.   Because no party has briefed whether summary judgment is appropriate under the new ERISA standard, the court must deny the motion before it.

Accordingly, the court orders that Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

**Dated:  September 28, 2007**              **/s/ Anthony W. Ishii**
                                             UNITED STATES DISTRICT JUDGE