IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY ALUISI,                                      )<br>                                                              )<br>                            Plaintiff,          )<br>        v.                                                  )<br>                                                              )<br>ELLIOTT MANUFACTURING CO.,    )<br>INC. PLAN, et al.,                             )<br>                                                              )<br>                            Defendants.     )<br>_____) | 1:04-CV-5373 AWI SMS<br><br>ORDER CONCERNING THE COURT'S CONSIDERATION OF EVIDENCE OUTSIDE THE RECORD<br><br>ORDER SETTING MARCH 16, 2009 TELEPHONIC CONFERENCE FOR 2:30 P.M. |

BACKGROUND

In this action Plaintiff requests that the court review Defendant's denial of long term disability benefits pursuant to ERISA. The second amended complaint alleges that Unum Life Insurance Company of America ("Unum"), on behalf of Defendant Elliott Manufacturing Co., Inc. as the ERISA Plan and the ERISA Plan Administrator ("Elliott"), improperly denied Plaintiff's long term disability benefits under ERISA.

On December 19, 2008, the court and the parties held a pretrial conference. At the conference, the court and the parties determined that motions in limine were necessary prior to the bench trial in this action. The parties dispute whether Plaintiff can present, and the court can consider, evidence outside the administrative record. On December 29, 2008, the court issued its pretrial order.

On January 16, 2009, Plaintiff filed a brief in which Plaintiff contends the court can

consider evidence outside the administrative record.  On January 26, 2009, Defendants filed response.   Defendants contend outside evidence cannot be considered.  On February 2, 2009, Plaintiff filed a reply.

On February 10, 2009, the court held a hearing.   At the hearing, the court heard oral arguments concerning what, if any, evidence outside the record the court can consider.    This memorandum opinion follows.

## LEGAL STANDARD

Where a plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate. Metropolitan Life Ins. Co. v. Glenn, – U.S. – , 128 S.Ct. 2343, 2348 (2008); Burke v. Pitney Bowes Inc. Long-Term Disability Plan, 544 F.3d 1016, 1024 (9th Cir. 2008); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).   If "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Glenn, 128 S.Ct. at 2348 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Nolan v. Heald College, 551 F.3d 1148, 1153 (9th Cir. 2009); Burke, 544 F.3d at 1024.  As is the case here, an employer has a conflict of interest when it both funds the plan and evaluates claims, and the court must take this conflict into account when it reviews the decision to deny benefits.  Glenn, 128 at 2348; Firestone, 489 U.S. at 115; Burke, 544   When the court reviews the lawfulness of benefit denials, the court will often "take account of several different considerations of which a conflict of interest is one."  Glenn, 128 S.Ct. at 2351.   The court is "to temper the abuse of discretion standard with skepticism 'commensurate' with the conflict." Nolan, 551 F.3d at 1153; Abatie, 458 F.3d at 959, 965, 969.   The Supreme Court explained as follows:

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great

2

> importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. *See Langbein, supra*, at 1317-1321 (detailing such a history for one large insurer). It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits. *See Herzel & Colling*, The Chinese Wall and Conflict of Interest in Banks, 34 Bus. Law 73, 114 (1978) (recommending interdepartmental information walls to reduce bank conflicts); Brief for Blue Cross and Blue Shield Association as Amicus Curiae 15 (suggesting that insurers have incentives to reward claims processors for their accuracy); cf. generally *J. Mashaw*, Bureaucratic Justice (1983) (discussing internal controls as a sound method of producing administrative accuracy).

Glenn, 128 S.Ct. at 2351.

The general rule is that "when applying an abuse of discretion standard to an ERISA plan, the district court's review is limited to the administrative record." Burke, 544 F.3d at 1027-28 (quoting Abatie, 458 F.3d at 970). However, the court may consider evidence outside the administrative record "to decide the nature, extent and effect on the decision-making process of any conflict of interest" Nolan, 551 F.3d at 1153; Burke, 544 F.3d 1028; Abatie, 458 F.3d at 970. "Similarly, the district court may consider evidence outside the administrative record if it determines that procedural irregularities prevented the full development of the administrative record." Burke, 544 F.3d at 1028; Abatie, 458 F.3d at 970.

## DISCUSSION

Plaintiff seeks to introduce two types of evidence.  First, Plaintiff seeks to introduce evidence showing Unum's history of biased claim denials.  Plaintiff contends this evidence will be derived from other published cases and sources relating to Unum.  Second, Plaintiff seeks to introduce testimony by his primary treating physicians and Plaintiff to establish that if Defendant had thoroughly questioned them or conduct an independent medical evaluation, Defendants would have easily seen Plaintiff is disabled.

//

**A.  Unum's History of Biased Claim Denial**

Plaintiff seeks to introduce the fact that UNUM has a long, well-documented history of biased claims administration.  Plaintiff asks that the court consider several court cases that have referenced Unum's claims administration history.  Defendant makes several evidentiary objections to this court's consideration of these other courts findings.

*1.  Judicial Findings of Biased Claims Administration*

Several court cases have cited to Unum's claims administration history.  Concerning Unum's prior history of biased claims administration, the Ninth Circuit has stated:

> This nationwide vote of no confidence seems to have been precipitated by the cupidity of one particular insurer, UnumProvident Corp., which boosted its profits by repeatedly denying benefits claims it knew to be valid. UnumProvident's internal memos revealed that the company's senior officers relied on ERISA's deferential standard of review to avoid detection and liability.

Saffon, 511 F.3d at 1210.  The Supreme Court has also recognized Unum's history.  In discussing facts that can show a conflict of interest and what weight district courts have given these facts, the Supreme Court has found that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. Glenn, 128 S.Ct. at 2351 (citing *John H. Langbein*, Trust Law As Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Denials Under ERISA, 101 Nw. U.L.Rev. 1315 (2007) (hereinafter "Langbein Article")).   The insurance company referred to by the Supreme Court is Unum.   In Harper v. UNUM Life Ins. Co. of America, 2008 WL 5245971 (E.D.Cal. 2008), this court considered the fact that Unum has a documented history of biased claims administration as a finding of fact.  This court cited to Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511 F.3d 1206, 1210 (9th Cir.2008); Cowder- Cowin v. Unum Life Ins. Co. of Am., 560 F.Supp.2d 1006, 1013 (W.D.Wash. 2008); Glenn, 128 S.Ct. at 2351 (citing Langbein Article).

4

1    Defendant contends that these court findings are based on only one law review article, the
2 Langbein Article.    Defendant complains that the Langbein Article is biased and not supported
3 by the evidence.  The court has reviewed the Langbein Article and finds that many of its
4 conclusions are based on other courts' factual findings.  The Langbein Article cites to cases that
5 have addressed Unum's denial practice.   The Langbein Article cites to court opinions in which
6 the courts have found, under the facts at issue in the case before the court, there was selective
7 review of the record, see Moon v. UNUM Provident Corp., 405 F.3d 373, 381 (6th Cir. 2005),
8 "lack of objectivity and an abuse of discretion by UNUM," see Lain v. UNUM Life Ins. Co., 279
9 F.3d 337, 347 (5th Cir. 2002), misuse of ambiguous test results, see Stup v. UNUM Life Ins. Co.
10 of Am., 390 F.3d 301, 310 (4th Cir. 2004), and claims evaluation practices that defied common
11 sense, see Dandurand v. UNUM Life Ins. Co. of Am., 284 F.3d 331, 338 (1st Cir. 2002), and
12 "bordered on outright fraud," see Watson v. UnumProvident Corp., 185 F. Supp. 2d 579, 585 (D.
13 Md. 2002).  See Langbein Article at 1320.  While these cases concern only the facts before them,
14 the Langbein Article cites to another court that reviewed many cases and found a disturbing
15 pattern.  See id. (citing Radford Trust v. First Unum Life Ins. Co., 321 F. Supp. 2d 226, 247
16 (D.Mass. 2004).  The court finds that the Langbein Article contains sufficient citation to court
17 cases for the court to find the fact Unum has a history of biased claims administration supported
18 by case authority.   For example, in Radford Trust, the District Court of Massachusetts reviewed
19 numerous cases and concluded that Unum has a disturbing pattern of erroneous and arbitrary
20 benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics.   Radford
21 Trust, 321 F.Supp.2d at 247-49 & n.20.

22    In light of the court findings concerning Unum, the issue for the court becomes whether
23 the court can adopt other court's findings, both cited in the Langbein Article and citing the
24 Langbein Article, to establish Unum's biased history.   Defendant takes the position that the court
25 cannot simply cite to other court findings about Unum's history to establish a biased history.
26 While not explicitly discussed by Defendant, Defendant appears to take the position that each
27
28                                                                  5

court must make its own findings on Unum's history based on whatever discovery the plaintiff obtains regarding Unum's past and present practices. The court finds that such individualized repetitive factual findings about Unum's *history* are not required under the unique inquiry the court is required to make under ERISA.

Numerous courts, including several Circuit Courts of Appeal, have considered Unum's history of biased claims review by merely citing to the Langbein Article and other court cases without requiring specific data. These courts have considered Unum's history as a given fact without citing any of the evidentiary concerns raised by Defendants. For example, the Second Circuit has considered Unum's biased history as established. In discussing the weight to be given to a conflict of interest, the Second Circuit reasoned as follows:

> This case also involves another relevant consideration specifically referenced in *Glenn*: "[W]here an insurance company administrator has a history of biased claims administration." *Id.* at 2351. First Unum is no stranger to the courts, where its conduct has drawn biting criticism from judges. A district court in Massachusetts wrote that "an examination of cases involving First Unum ... reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." *Radford Trust v. First Unum Life Ins. Co.*, 321 F.Supp.2d 226, 247 (D.Mass.2004), *rev'd on other grounds,* 491 F.3d 21, 25 (1st Cir.2007). That court listed more than thirty cases in which First Unum's denials were found to be unlawful, including one decision in which First Unum's behavior was "culpably abusive." *Id*. at 247 n. 20. Also, First Unum's unscrupulous tactics have been the subject of news pieces on "60 Minutes" and "Dateline," that included harsh words for the company. *Id*. at 248-49. First Unum has fared no better in legal academia. <u>See</u> John H. Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA*, 101 Nw. U.L.Rev. 1315 (2007). In light of First Unum's well-documented history of abusive tactics, and in the absence of any argument by First Unum showing that it has changed its internal procedures in response, we follow the Supreme Court's instruction and emphasize this factor here. Accordingly, we find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying [the plaintiff's] claim for benefits.

<u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 137 (2nd Cir. 2008). The Eighth Circuit has also found Unum's claims history as established. However, in the case before it, the Eighth Circuit concluded this history insufficient to show an abuse of discretion when considering all the factors. The Eight Circuit reasoned as follows:

> " . . . . The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. See *Langbein*, *supra*, at 1317-1321 (detailing such a history for one large insurer)." *Glenn*, at 2351 (citing *John H. Langbein*, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U.L.Rev. 1315, 1323-1324 (2007)).
>
> Even though no conflict of interest could be assumed pre-*Glenn*, [the plaintiff] argued in his brief that a palpable conflict exists because UNUM engaged in unlawful procedures in handling his claim. The procedures he refers to are those that were subject to a multistate examination of the claims handling practices of UNUM Life and other subsidiaries of UNUM Provident. These practices are the subject of the law review article quoted by the Supreme Court in the passage above. In September 2003, the Department of Labor and state regulators began a joint examination of claim files and claim administration and policy manuals from these companies to determine if their disability income claims handling practices reflected systemic unfair claim settlement practices. The examiners found several areas of concern, including excessive reliance upon in-house medical professionals, unfair construction of attending physician or independent medical exam reports, failure to evaluate the totality of the claimant's medical condition, and inappropriate burdens placed on claimants to justify their eligibility for benefits. The result was a plan of corrective action implemented through a regulatory settlement agreement and consent orders entered into with the states.
>
> We are instructed by *Glenn* to give importance to this conflict of interest, "perhaps . . . great importance," *Glenn* at 2351, depending upon how closely the other factors are balanced. The findings of the investigation are troubling, and we do not minimize their import. Taking into account the remaining factors discussed below, we conclude that there is not a sufficiently close balance for the conflict of interest to act as a tiebreaker in favor of finding that UNUM abused its discretion. See *id*.

Wakkinen v. UNUM Life Ins. Co. of America, 531 F.3d 575, 581-582 (8th Cir. 2008).  Several district courts, including this one, have found Unum's history of biased claims review is demonstrated by the Langbein article, other court cases, and state insurance commissions' investigations.  See, e.g., Harper v. UNUM Life Ins. Co. of America, 2008 WL 5245971 (E.D.Cal. 2008);  Ettel v. UNUM Life Ins. Co. of America, 2008 WL 5186537, *4 (W.D. Wash. 2008); Welch v. UNUM Life Ins. Co. of America, 2008 WL 3876319, *4 (D.Kan. 2008); Carder-Cowin v. Unum Life Ins. Co. of America, 560 F.Supp.2d 1006, 1013 (W.D.Wash. 2008).

Glenn itself seems to imply that a history of biased claims administration can be established by other court findings.   In his concurrence in Glenn, Chief Justice Roberts agreed

with the majority that evidence of a history of biased claims administration should be considered.

Chief Justice Roberts stated as follows:

> It is the actual motivation that matters in reviewing benefits decisions for an abuse of discretion, not the bare presence of the conflict itself. Consonant with this understanding, a conflict of interest can support a finding that an administrator abused its discretion only where the evidence demonstrates that the conflict actually motivated or influenced the claims decision. Such evidence may take many forms. It may, for example, appear on the face of the plan, see *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 7, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (offering hypothetical example of a plan that gives "a bonus for administrators who denied benefits to every 10th beneficiary"); it may be shown by evidence of other improper incentives, see *Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263, 1265 (C.A.8 1997) (insurer provided incentives and bonuses to claims reviewers for "claims savings"); or it may be shown by a pattern or practice of unreasonably denying meritorious claims, see *Radford Trust v. First Unum Life Ins. Co.*, 321 F.Supp.2d 226, 247 (D.Mass.2004) (finding a "pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics").

Glenn,128 S.Ct. at 2354-55 (Roberts, J., Concurring).   Chief Justice Robert's cite to Radford Trust, implies that a biased history can be found by reviewing other court opinions.

Based on the above authority, the court finds that Defendant's biased history can be based on the findings of other courts, including those of the Supreme Court.   The court declines to find that Glenn requires a plaintiff in every case to prove a biased history by way of statistics and data obtained through discovery.   The court finds that a biased history can be established by the findings of other courts.  Based on the numerous courts that have cited to Unum's biased history of claims' administration, the court will consider this history without further evidence at the bench trial.

### 2.  Objection Based on Hearsay

Defendants contends that this court cannot consider the findings of other courts because they are hearsay.  The court recognizes that one court has found that evidence of Unum's biased history based on the Langbein Article and other court cases is inadmissible on hearsay grounds. See  Bartholomew v. Unum Life Ins. Co. of America, 588 F.Supp.2d 1262, 1267-68 (W.D.Wash.

1  2008).   However, based on the numerous courts to find Unum's biased history is established, the
2  court respectfully disagrees with the finding that this evidence is hearsay which the court cannot
3  consider.
4       Regardless, assuming Unum's biased history is subject to a hearsay objection, the court
5  finds it is admissible under Rule 807 of the Federal Rule of Evidence.   Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

13  Fed. R. Evid. 807.  "A court's most important inquiry under this Rule is whether the proffered
14  evidence has trustworthiness equivalent to that of the enumerated hearsay exceptions."  F.T.C. v.
15  Figgie Intern., Inc., 994 F.2d 595, 608 (9th Cir. 1993).
16      For the reasons discussed above, the evidence that Unum has a biased history is relevant
17  to whether Unum had a conflict of interest and whether it abused its discretion in this case.   The
18  probative value of the judicial findings is more probative on the issue of biased history than any
19  other evidence Plaintiff can procure through reasonable efforts.  For Plaintiff to show this history
20  through a review of Unum's other claims grants and denials would be burdensome as it would
21  require significant discovery, expert interpretation of data, and potentially mini trials as the
22  parties fought over whether Unum's conduct when denying other claims was proper.  Because of
23  the difficulty of this court reviewing other claims denials to show a history of biased claims
24  administration, the interests of justice support admission.   The hearsay exceptions exist because
25  they have some circumstantial guarantee of accuracy and trustworthiness.  Idaho v. Wright,  497
26  U.S. 805, 820 (1990).   An established fact found by the Supreme Court, Second Circuit, Eight

Circuit, Ninth Circuit, this court, and several other district courts has a sufficient indica of reliability, accuracy, and trustworthiness to support the purpose behind the Federal Rules of Evidence. Finally, the notice to the opposing party factor is satisfied in this case because Defendant has know for some time that Plaintiff would seek to introduce this evidence, and Defendant already has identified potential rebuttal evidence. Thus, to the extent other courts' findings that Unum has a history of biased claims administration is subject to a hearsay objection, the court finds that it is admissible under the residual exception to the hearsay rule.

### *3.  Defendant's Objection Based on Rule 403*

Defendant next contends that the prejudicial effect of considering the findings made in other cases about Unum's history outweighs any potential probative value under Rule 403 of the Federal Rule of Evidence. Rule 403 allows the court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403(b)   The court has broad discretion in assessing admissibility under Rule 403. Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1124 (10th Cir. 1995).

The probative value of evidence that Unum has a history of bias has great relevance on whether Defendant had a conflict of interest. Because this is a bench trial and because there are ways for Defendant to argue and to show that such a history had little or no influence in this case, the court's consideration of these findings would not be prejudicial to Defendant. Defendant's objection based on Rule 403 is overruled.

### *4. Defendant's Objection Based on Rule 404*

Defendant contends that this evidence is improper character evidence under Rule 404 of the Federal Rules of Evidence. Rule 404(b) prohibits evidence of other crimes, wrongs, or acts

10

to prove the character of a person in order to show action in conformity therewith.  However, Rule 404(b) allows such evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Plaintiff is not attempting to introduce the evidence of Unum's history as character evidence.   Rather, Plaintiff's evidence falls under Rule 406 of the Federal Rules of Evidence.  Rule 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406.  Because Defendant does not argue this evidence is inadmissable under Rule 406 and confines its objection to Rule 404, Defendant's objection fails.

Defendant's history falls within Rule 406 of the Federal Rule of Evidence.   Courts have found that a corporation's business practice may be admitted as habit or routine practice. "[E]vidence of a routine practice is highly probative, and persuasive. It is particularly persuasive in the business context because the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." <u>Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc.</u>, 45 F.3d 96, 99 (5th Cir. 1995) (citing McCormick on Evidence § 195, at 351 (4th ed. 1992) (internal cite omitted).   The Tenth Circuit has found that evidence of an insurance company's "pervasive, consistent pattern" of rescinding insurance contracts without determining whether there was good cause to do so was admissible under Rule 406.   <u>Vining on Behalf of Vining v. Enterprise Financial Group, Inc.</u>, 148 F.3d 1206, 1219 (10th Cir. 1998).    The Fifth Circuit has found that evidence showing a defendant's routine practice of short loading its trucks was admissible to infer that it loaded its deliveries to plaintiff consistent with that practice.  <u>Mobil Exploration</u>, 45 F.3d. at 100-01.  The Seventh Circuit has held that evidence showing it was the routine practice of insurance agents to give oral assurances

that varied from the written insurance policy was admissible to establish that such conduct transpired in a particular instance. Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989). Based on Rule 406, the court finds the judicial recognition of a biased history admissible to show Defendant's routine practice. Defendants' objection on Rule 404 is overruled and this evidence will be considered under Rule 406.

### *5. Defendant's Objection Based on Court's Findings on Summary Judgment*

Defendant contends that on summary judgment this court found that there was no evidence the individuals who reviewed Plaintiff's claim were biased. As such, Defendant contends the court has made a final finding of fact that any biased history did not influence its decision and this fact has already been decided in Defendant's favor. Defendant incorrectly assumes that any factual findings made on summary judgment are conclusive for trial. On summary judgment, the court only considered evidence provided to the court in the parties' statements of undisputed facts. These facts included Defendant's evidence taken from outside the record showing the decision makers in this case had no incentive to deny benefits. The court's decision to only review those undisputed facts submitted by the parties has been recently affirmed by the Ninth Circuit, which has found that when examining evidence outside the administrative record in an ERISA case, a district court is required to apply traditional rules of summary judgment including requirement that evidence be viewed in light most favorable to nonmoving party. Nolan v. Heald College, 551 F.3d 1148, 1154 (9th 2009).

At the bench trial the court is not bound to the facts provided by the parties at summary judgment, the court can consider the whole administrative record. In addition, the court does not have to view the evidence in the light most favorable to the nonmoving party. Thus, any factual finding made on summary judgment are not final for the purposes of trial, and such findings do not preclude the consideration of evidence outside the record at trial.

### *6. Rebuttal Evidence*

If the court determines that it will consider Unum's biased history as found by other courts, Defendant requests permission to show that any history of bias did not influence the denial of Plaintiff's benefits. The fact an insurance company has been found to have a history of biased claims administration does not always mean the conflict of interest is of great importance. The Supreme Court has found that the conflict is of little importance "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." Glenn, 128 S.Ct. at 2351.

In its brief, Defendant asks for leave to introduce rebuttal evidence. Defendant requests to be allowed to introduce the testimony of Carolyn Brooks, Director of Unum's Long Term Disability Claims Unit. Based on Glenn, the court will allow Defendant to introduce evidence concerning Defendant's decision making in this case. On summary judgment, the court allowed Defendant to introduce similar evidence by way of declaration to show no conflict of interest influenced the decision making in this case. Nothing in the parties' briefs indicates any reason such evidence could not be submitted by declaration for the court to consider when making its final findings of fact and conclusions of law in this action. As long as Defendant's evidence is relevant to what Defendant has done to reduce potential bias and to promote accuracy, along with showing that no bias influenced the decision in this case, Ms. Brook's declaration will be considered.

**B. Plaintiff's Testimony and His Doctor's Testimony**

Plaintiff also seeks to introduce testimony by himself and his primary treating physicians. Plaintiff contends that this testimony will show that if Unum had thoroughly questioned Plaintiff and his primary treating physicians or conducted an independent medical evaluation, Unum

would have easily seen that Plaintiff remained disabled.

### 1. *Testimony Going to Merits of Plaintiff's Disability*

Testimony from Plaintiff and his treating physicians is inadmissible to the extent such evidence goes to the merits of Plaintiff's case, i.e. whether Plaintiff is in fact disabled. In deciding whether the plan administrator's determination that Plaintiff is not disabled under the plan was clearly erroneous, the court is limited to the record before the plan administrator, and the court cannot order the administrator to take more evidence. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006). Thus, Plaintiff may not present evidence by his treating physicians and himself on the issue of Plaintiff's disability.

### 2. *Testimony Showing Conflict of Interest - Failure to Properly Investigate Plaintiff's Claims*

At the hearing, Plaintiff explained that he desires to admit the testimony from Plaintiff's treating physicians because Unum did not give proper consideration to Plaintiff's treating physicians' opinions that Plaintiff was disabled. Plaintiff claims that his treating physicians were not given enough evidence from the administrative record to respond to Unum's additional evidence. Plaintiff argues that he should be able to show what Plaintiff's treating physicians would say if they had been better interviewed by Unum.

The court finds that if Unum's investigation was so minimal that it never followed up with questions to Plaintiff's treating physicians, Plaintiff's evidence of what his treating physicians would have told Unum if properly asked may be relevant to show a conflict of interest. The court may admit extrinsic evidence "when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct." Abatie, 458 F.3d at 972-73. For example, in Dishman v. UNUM Life Ins. Co. of America, 269 F.3d 974 (9th Cir.

2001), the Ninth Circuit affirmed the district court's decision to allow the introduction of evidence outside of the administrative record because the insurance company had precluded the plaintiff from presenting relevant evidence prior to terminating benefits or in a subsequent appeal, and as such, the insurance company essentially failed to conduct an administrative review.  Id. at 985- 86.  In Friedrich v. Intel Corp., 181 F.3d 1105, 1110 (9th Cir. 1999), the plan's appeals committee had before it only the treating physicians disorganized and unexplained raw date but also was given drafted opinions from the plan's examining physicians.  Id. at 1110  No documents by the treating physicians discussed the disability criteria at issue and they were incomprehensible and illegible.  Id. at 1111.  In contrast, the typed reports from the plan's examining physicians specifically addressed the objective medical evidence requirement and the mental illness exclusion of the plan.  The plan never provided its examining physician' reports to the plaintiff or his treating physician for comment.  Id. at 1009.  In essence, the claims process utilized by the plan denied the plaintiff the opportunity to demonstrate disability based on the facts being used by the plan.

In Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863 (9th Cir. 2008), the Ninth Circuit reiterated a plan's duty to have a meaningful dialogue with its beneficiary in deciding whether to grant or deny benefits.  Id. at 878.   In Saffon, the plan disregarded this responsibility by communicating directly with the plaintiff's doctors without advising the plaintiff of the communication.   In addition, the plan took various doctors' statements out of context or otherwise distorted them in an apparent effort to support a denial of benefits.  Id.   The plan's letter to the treating doctor gave him 10 days to respond if he disagreed with a reviewing doctor's report, but this report was not sent to the plaintiff.  Id. 878 n.3  The doctor missed the 10-day deadline and, because Saffon was not notified, she was not in a position to urge him to timely respond or ask that the plan extend the deadline.  Id.  Finally, the plan tended to communicate with the plaintiff's primary care physician, who had very little to do with treatment for the plaintiff's back injury.  The Ninth Circuit concluded by staying: "A doctor is not a

15

lawyer; though he may provide information that is relevant to a claimant's disability, his actions (or inaction) cannot bind the client.  If a claims administrator communicates with a doctor who has treated a beneficiary, it must disclose that fact to the patient at a meaningful time."  Id.

Based on this authority, the court finds that the proposed testimony of Plaintiff's treating physicians is admissible *if* the administrative record was not fully developed.   Plaintiff must first show from the administrative record that there was no "meaningful dialogue" with Plaintiff and/or Unum did not seek further information from Plaintiff's treating physicians and relied only on their brief and vague records.   Evidence outside the record may only be considered to show an abuse of discretion, and it is not admissible to show whether Defendant properly denied the benefits.   Thus, Plaintiff may not provide evidence from his treating physicians unless Plaintiff provides an offer of proof from the administrative record showing how the record was not fully developed.

## ORDER

Based on the above memorandum opinion, the court ORDERS that:

1. Plaintiff SHALL be allowed to present evidence of other court findings concerning Unum as part of the bench trial in this action.
2. Plaintiff is PRECLUDED from presenting evidence from Plaintiff and his treating physicians to the extent Plaintiff is introducing this evidence to show Plaintiff's disability.
3. Plaintiff is not precluded from introducing Plaintiff's and his treating physicians' testimony *if* Plaintiff can show that Unum failed to conduct a proper investigation.
4. The parties are ORDERED to meet and confer prior to March 16, 2009 to discuss how Plaintiff should present his arguments and evidence concerning the lack of a proper investigation.

      5.      The court will hold a telephonic status conference on this matter for, the purpose of setting further dates, on March 16, 2009 at 2:30 p.m.. The parties are DIRECTED to arrange for a conference call and call the court's polycom number at 559-499-5669.

IT IS SO ORDERED.

**Dated:**   **March 4, 2009**                         **/s/ Anthony W. Ishii**
                                                       CHIEF UNITED STATES DISTRICT JUDGE

17